We'll move on to our final case set for argument today, State Farm Mutual Auto Bill Association Company v. Triple L, and then a second case v. John Oles, case numbers 21-35408 and 21-35409. It looks like appellants are splitting time, so we'll hear first from Mr. Snipes. We'll give you six minutes on the clock, and we'll try and keep it even for each party. Much appreciated, Your Honor. Ben Snipes, buying on behalf of co-appellant and intervener, Mr. John Oles. What we're here today to address, and may it please the Court, is the control test that was misapplied to define employee in a liability employee insurance exclusion, where the common usage and common definition is well-established in Montana insurance jurisprudence and should have been applied. Do you agree, counsel, that if the control test is the proper test, that that means your client was an employee of Triple L and therefore excluded? Your Honor, no. The control test is most typically applied in an entirely different context. No, I understand that you're arguing that the control test is not applicable, but that's one of the things that we have to decide. If we found that the control test should be used, doesn't that preclude coverage for your client? Because he was, the control factors weigh heavily in favor of he was an employee of Triple L. Your Honor, I think that would be a question of fact, and I would say that in that circumstance, it would be appropriate to go back and argue those facts to determine if there was actually sufficient control to establish all the elements of that control. Summary judgment, wasn't that exactly what was argued and presented to the lower court? It certainly was, and I believe that my co-counsel on this, or at least co-appellant, has primarily reserved his time to address the different facts and differentiation of facts. And I'm more inclined to address the coverage issue at hand, but there is facts that can be argued one way or the other, and I believe it would, in my opinion, if you're asking for my opinion, it would preclude summary judgment on that issue. Fortunately, we probably do not need to get there, because the control test has never been applied in Montana to address an insurance policy exclusion, and it's very well-sounded why. The control test is established to evaluate the difference between an independent contractor and a worker who would be subject to workers' compensation. Well, but that actually does seem relevant here, because, I mean, one of the questions is, what is their status with Triple L? It seems like, I want to make sure I get it all right, the original, what's the original company? Triple L and Phoenix. There's no question that they're an employee of Phoenix. It seems like it's undisputed, everybody agrees that these are employees of Phoenix, because Phoenix is paying them. But the question is, what's the status with Triple L? And I think just because they're an employee of Phoenix doesn't preclude them also being an employee of Triple L. And so then, isn't the question whether they're operating as an independent contractor, by virtue of their, I don't know, referral, they're referred as an independent contractor to Triple L, or whether they're an employee of Triple L, isn't that exactly the question we're trying to decide? Well, it is, but in an entirely different context. The question that we need to decide is, what definition needs to be applied to an insurance exclusion? And the definition that's applied is absolutely certain within Montana law. It's the common usage, the common sense. You seem to be saying that because the last time that the test you like was applied happened to be in an insurance context. But the insurance context in which that arose wasn't the same as here, where you had a question of whether they could be employees of two different companies. Well, in this circumstance, the question is, is the exclusion in and of itself too broadly interpreted? And Larson's test, which you have to look at from the perspective of a reasonable consumer of insurance, okay? Larson's test is a broad and all-encompassing effort to include people in Montana's workers' compensation scheme and other workers' compensation scheme. We don't want injured workers who are deemed independent contractors left without coverage if they get injured at work. And so the context is absolutely different. And particularly in Montana, where in Montana there's a constitutional provision that allows for a subcontractor employee to pursue a claim against a contractor if he is injured at work. So within that context, with that frame, the control that's being utilized to establish coverage in this case or determine coverage in this case might be the very same control that establishes liability. Counsel, so you've said that we should just use the common usage. So common usage means what? So there's a four-part test to determine control. Is it just one of those prongs is common usage? What does common use? That doesn't tell me very much. Sure, sure. And I can tell you where they derive. So in Horton, the common usage derives from Webster's Dictionary. And Webster's defines it as one engaged in services for wages and salary by another. Almost every reasonable insurance consumer has Webster's Dictionary. Okay. Okay. So what does that tell us the test is? Is it who cuts the check? Your Honor, it is who cuts the check. And they could easily look at who's on my payroll roster and who do I provide workers' compensation coverage. Okay. So that's very good for telling you sort of who's included. But I'm trying to figure out, you know, there are a number of cases in Montana that say just because you're an employee of ABC Corporation doesn't mean that you're not an employee of XYZ. And so Montana has said you can have dual employers. And that seems to be the question here is not whether they were — whether your client was an employee of Phoenix, but whether they were also an employee of Triple L. So, yes, Your Honor. That — and then in that context, it's never been applied to see this duality in employment as an impediment to the liability coverage. It's always been whether or not the workers' compensation coverage should be applied to this person as opposed to another. And in turn, what happens is if there's workers' compensation coverage, that employer gets immunity and tort. So a lot of the times, the putative employers are going to say, well, he was dually employed. He can't bring an action against me. He's dually employed in a way that it would preclude this tort action, and they use it as a defense. Only twice, though — there's not been numerous cases — only twice has a dual employee circumstance been established. Once in PAP, which is a joint venture incident, and the other is Romsbach, a more recent case involving Montana's professional employment organization statute, which allows — This seems to be very similar to the joint venture example. It's not, Your Honor, in a joint venture. PAP was very narrowly construed. There's been many other cases, including the Scramstead case, where you think, boy, this could be a joint venture. Let's take a look at it. The defendant in that case had seven sister companies, all under one general partnership, and the court determined only one is the immediate employer. None of the rest get exclusivity protections under Montana's control test. So we have a circumstance — Yeah, that seems to play into it. They applied the control test to determine whether it applied in that circumstance. So that seems to suggest we should do the same thing here. Yeah, but that was not in the context, again, of an insurance exclusion, which must be narrowly construed, but rather in the context of, do we want workers' compensation coverage to apply? And in turn, do we want the exclusive remedy provision as a defense applied to all seven entities or just one? And so, in that circumstance, Your Honor, what we're looking at here is a situation where, thankfully, we don't have to get there. The common usage is already expressed. We put all nine minutes up for you. Do you want to reserve some of this for rebuttal? I'll reserve one for rebuttal, Your Honor. The common sense definition is clear. Thank you. All right. Thank you, counsel. Mr. Haas. May it please the Court, my name is Matthew Haas. I'm the attorneys for Triple L, Incorporated. I was going to present on the control test, as Mr. Snipes, but I wanted to comment on one point in the discussion you were having about the control test versus the Horton definition for employee. And it's the policy difference between those two tests. Where the control test, the Montana Supreme Court is looking at the policy of trying to encourage workers' compensation insurance to be covered by Montana employees. Where the policy of the definition of employee under the construction for exclusions is to construe it narrowly. And that policy difference becomes apparent in the way that the control test is applied. The employment status can be found on the strength of just one of the four factors. Whereas to be considered an independent contractor, it requires a convincing accumulation of the factors. So, counsel, let me see if I can restate this, make sure that I understand it. So you're suggesting that part of the choice between control and common usage is the control test is more generous. It's more inclusive as to who fits into the bucket of employers. And the reason that they do that is to ensure that somebody's, that an employee is going to be covered by somebody for workers' comp. Exactly. But on the control, on the common usage, your contention is that that should be a little more narrow here because, for example, in this case, that would allow the employee, the employee of Phoenix, Mr. Olaze, to sue Triple L. Precisely. And to take that a step further, the issue which is actually has occurred here is that if the control test was applied as the definition, in addition to the fact that it would violate the Montana Supreme Court's constructions for insurance exclusion, the control that would lead to someone being considered an employee would also lead to them being considered, or sorry, it would create liability from a general contractor to the employee of a subcontractor. So that happened here. In the underlying case, the motion for partial summary judgment was granted on a non-deliquent duty first. So does the choice between the control test and the common usage test here have any impact for your client other than whether or not it's covered by the insurance policy with State Farm? In other words, if you're the employer and the workers' comp has been paid out, can you still be on the hook for other things, for some kind of negligence in the workplace argument? You're referring to Triple L, is that correct? I'm sorry, Triple L. Independent of insurance. So let's set the insurance aside. Is your client going to be on the hook here, potentially on the hook, to Mr. O'Lease, whether or not he's their employee? Yes. I mean, and the only result of this Court's decision and the district court's decision is whether or not that potential liability is insured or not. Is whether State Farm may have to cover. Yeah, whether it's a covered or uncovered liability. You guys are at the same table right now, but you're going to be at different tables later on in this proceeding, is that correct? It's — exactly. All right. Exactly. And that is what's happened here. Let me ask this question. Putting insurance to one side, if Mr. O'Lease sues Triple L, Triple L raised as a defense that under the control test, he's actually our employee and, therefore, covered by workers' comp, which he got from Phoenix, and he can't sue us. And this is what Mr. Snipes was referring to, is the answer is no, because Article II, Section 16 of the Montana Constitution specifically addressed that question. And it was enacted to prevent a third party from receiving protections from workers' comp exclusivity. So we — not only did we not receive the protections of workers' comp exclusivity, but the district court has determined that we had a non-delta duty under contract, so we are — we had a duty to the employee of our subcontractor. So what you have here is the control test has actually — what State Farm is asking for to be created in Montana is for liability to be created that would be — that would not be covered by insurance. That would be the result. So, counsel, you know, one thing that sort of runs through this, but nobody ever used these words that I can see in any brief or the opinion or anything else, is it looks like the district judge is sort of piercing the corporate veil here. This doesn't really — this looks like a little bit of a trick. It looks like a little bit illusory. It looks like there's been some mirrors used here by the owners of these two companies to set this up. And in some way, perhaps it's set it up in a way in which they could avoid paying additional insurance premiums for the coverage. And it looks like Judge Morris has said, I'm going to pierce that veil, and I'm going to use the control test to do that. I agree with the sentiment. Unfortunately, it's incorrect, because Mr. Oleis was covered by workers' compensation insurance. When Phoenix RCM obtained workers' compensation insurance, the district court's conclusion about why the company was created is conflicted by the factual record. Milka Love discussed the fact that she and three other gentlemen created the company to form a company together. That was the purpose. But the district court ignored that evidence to — and I agree with you.  Can I — so you're saying this provision of the Montana Constitution would put — Triple L would create potential liability for negligence for Triple L that is uncovered by insurance if under the — if Mr. Oleis is found to have been an employee for purposes of that exclusion? Yes. OK. Now I understand why you're both on the same side of the table. That would be the exact result here. I know you're over time, but I'm not sure you — Judge Bolton asked a question initially, which is, if the control test applies, is there still a basis for reversal here? Yes, Your Honor, and I'll try to be very quick, so I have no time. There was evidence submitted on each of the factors that was ignored by the court. The briefing provides the citations to the record. And I think the most important part of that question was the district court relies heavily on the USPS. It refers to it as contracts instead of a contract. That was never submitted. It's not part of the record. So the district court's order is really based upon inadmissible evidence. So if the court would proceed to analyze this case under the control test, it would still require reversal because there's a genuine issue concerning material facts. OK. Thank you, counsel. And we'll still give some time for rebuttal. May it please the court. My name is Brad Luck, appearing on behalf of Appellee State Farm Mutual Automobile Insurance Company. We would respectfully submit that the district court, Judge Morris, very concisely and accurately described the record in this case. Proven facts, applicable law, finding that Mr. Olias was a dual employee of both of these interrelated family companies. Judge Bybee, a follow-up on your question. You know, we start with the facts and then we discuss applicable law and I think some inconsistencies in the positions that have been taken by the appellants and intervenors. But if we start with the facts, I think we need to candidly set the table here. Phoenix has no purpose at the time of Mr. Olias's accident other than to provide drivers to Triple L. Recording stopped. Must have been a bad point. But it is true. I wrote it down, counsel. Thank you, Your Honor. Triple L has no function other than providing these drivers. Why is that an illegitimate function? Is that a violation of Montana law? Not at all. And that's, but it's important to this idea of the context and the relationship of these companies. But would it be different if they were providing drivers? Say they were just, you know, they hired all the drivers and then they farmed them out to two or three different companies. Would that change the analysis then? I don't think so because they could take advantage of Montana law that would allow them to be a professional employment organization, a PEO, which they didn't. And then when we talk about Ramsbacher, we'll see that there really was a legitimate arrangement there. The point I was going to make is Phoenix only provides their own, their sole function. They have no other employees. They provide drivers. Triple L has this big USPS contract, has no employees. And one of the machinations that was discussed in the 30B6 depositions was the fact that Triple L buys trucks. It leases them to Phoenix. Phoenix leases them back at an upcharge. And Triple L pays not only the purchase price, but the lease charge. And the whole purpose of these machinations is to increase the cost of labor, increase the cost of equipment. For business loss. And pass it on to the US Postal Service for the financial benefit of the both companies. And when the question was asked, is it, was this created in order to save workers' compensation benefits? Yes. Another important, uncontested. How does that relate to this question? One of the struggles here is that the district court sort of just jumps into the control test applying. It doesn't really grapple with the debate that's happening here. I assume this debate happened below. And there's not a lot of guidance on why the control test was chosen over the ordinary definition. I understand, Your Honor. I think that's a legitimate question. Since 1978 and for years before that, the Sharpe case has indicated that in Montana, the right to control is a determination of employment status. And that's where the four-part test first came out. Those of us that are old enough to have been around when that case was decided, watched that control test apply in Montana for the last 50 years. And any survey of the law, which the court has recognized, is going to identify that. Ferguson, the Montana Supreme Court, indicated that that test is used for all purposes. Of course, the context typically is employee versus independent contractor. Because if you look at the cases and survey the cases, you'll see there's been a tension because of high workers' compensation premiums in the state of Montana for independent contractors versus employees over the years. The statutes have been changed. Several Montana Supreme Court decisions have come down. And we've landed on and continually used this control test. But isn't it curious that there's never been a Montana insurance coverage case that discussed whether or not an exclusion for employees is one where one uses the control test or uses these principles of insurance contract interpretation, ordinary usage, regional expectations? On page two of intervener's reply brief, they said, employee, these are common usages. They don't need definitions. I think the fact that, for instance, in this situation, exclusion says, if you're an employee of the insured, there's no coverage. It's that simple, I think, Your Honor. And I think if we look at the cases, and they said that they apply it all the way through, and Judge Morris did, sometimes they don't use, because of the circumstances, all four. But we're talking about whether we're using the control test. But the control test is designed to expand coverage under workers' compensation to make sure that an injured worker is not misclassified as an independent contractor and therefore doesn't have workers' comp coverage. An insurance policy exclusion for liability coverage is supposed to be strictly construed against broadening that exclusion and to make sure that it meets what an ordinary person reading it would interpret the word to mean, particularly a word that's not defined in the policy, like in this case. The concepts, Your Honor, I agree with totally. But let's look at the sole case that they point to in relation to having a different test that justifies this, the Holton case. It says right there, the usual ordinary consumer would never expect on a liability policy that an employee would be covered for liability purposes. And the reason it's never been cited, as of last night when I checked, other than the Betcher case, which is totally out of context in terms of the guarantee fund, the reason it's never been cited is because that is not a proper presentation of the case. The first line of that case says, Gary Trader is an employee of Horton and Gardner Concrete. There was never a question about what his employment status was. We had an aggressive argument that the definition of employee should be limited to least employees. And it was summarily, from many angles, beaten down. That case, I would submit, is not support. It doesn't relate to the breadth or the tightness of exclusions. The fundamental law in the state of Montana is if an exclusion or any provision of a policy is clear and unambiguous, then it's going to be applied as stated. When we say, if you're an employee of the insured, there is no coverage, we don't need to go any further than that. This Holton case, too, I'm sorry, Your Honor. I'm putting aside. Now I'm going back to the Montana Constitution. So a company like Triple L, the insured, buys a liability insurance policy that excludes only the insured's employees.  So with the reasonable expectation of Triple L, who's going to be liable if Mr. Oleas is injured on the job and they're negligent, wouldn't their reasonable expectation be, I've just bought insurance to cover this liability that exists under the Montana Constitution? Well, if we're talking about Triple L, I'd say no. They're a pretty sophisticated consumer. And what they did and what's in the record here, I'll get to your question, what's in the record here, uncontested, is for over 20 years, those exact same jobs, exact same jobs, conditions of employment, supervision, everything, have gone from Triple L to Phoenix and now they're back to Triple L. They have never changed, same duties. It's just who paid their wages and who bought their workers' compensation. But that has legal consequences. So you create a corporation and you have employees and you have to pay workers' comp and you have to buy insurance and you have to issue W-2s. I mean, there are legal consequences for doing that. And so it may feel very formalistic, but the law does permit some form in what we do. You're, you know, you're asking for a very, very narrow construction of your contract, your insurance contract with Triple L. There are forms there that you are relying on in the same way that these guys are trying to get something else out of this. So, I mean, everybody's being a little bit formalistic here. Yes. I disagree, Your Honor, and let me try to explain. Article 2, Section 16 says, there is exclusivity for the immediate employer of the employee. Three times, at least. Ramsbacher, Schlock, Schrock, and Papp. Papp is the two entities. Two driving companies and one joint venture. The Montana Supreme Court says there's nothing that, in the law of the state of Montana, that says you can only have one immediate employee. Under this ruling... Employer. You said one immediate employee. One immediate employer. Employer. Yes, Your Honor, I'm sorry. So under this ruling, what Judge Morris found is they're paying the wages over here. Yes, they're an employer. But under the control test, which is clearly applicable, we have a dual-employee situation. We have two immediate employers, subject to, by virtue of the decisions in Papp, Schrock, and Ramsbacher, that they have exclusivity, very specifically. So the order... Do you disagree with Mr. House that Triple L could have liability for negligence that's now uncovered because of this policy exclusion, because of the provision of the Constitution? There's nothing in the record that I know about a summary judgment order in that other case on non-deliberate duties, and I want to talk to you about that underlying case in a minute. But if there is a negligence case for two... Against one of the immediate employers, yes, I believe that the Montana Constitution provides exclusivity based on those cases that say that you can have more than one immediate employer for constitutional and exclusivity purposes. So, Counsel, as I was reading through all the Montana cases last night, I was trying to pull my hair trying to figure out what the threat of consistency was there, trying to figure out why sometimes we use the control test and sometimes we use the common usage test. If I thought that there was some ambiguity and that there was no Montana case that was precisely on point, would there be any reason to certify this to the Montana Supreme Court? I don't think so, Your Honor. In 2018, Sinning and Bank, Unanimous Decision of the Montana Supreme Court and took almost this exact situation, although it was more formal. We had an employee to the trucking company from a PEO, so clearly under the law and they were paying the wages, they were the legal employer. But then they applied the control test. And Bank went through everything that sounds exactly like this case, absolute control over the routes, policy manuals, conduct codes, all those sorts of things and said that the trucking company is also an employer and also subject to exclusivity. And they also said, in fact, because they pay the fee, which includes the comp premium and the wages and some write-up from the PEO, they're also paying toward workers' compensation. PAP said the same thing when they had two independent entities in a joint venture. One was reimbursing the other for some of the comp and wages and they found exclusivity there and dual employees. I'd like to touch on a few other facts that I think are important. This USPS contract, we had two 30B6 depositions in this record. One was in the underlying case and one was in our case. We questioned at length their representatives, the two owners. One did one, one did the other, about the contract. We provided significant detailed statements. Was the contract never provided? The actual contract was never provided? Is that right? Oh, we had it as an exhibit and discussed it with them. And so what we used was their interpretation, their position, their statement about that contract in our very complete Statement of Uncontested Facts, which were clearly reviewed by the Court and considered. But what he did is he referred back to our Statement of Uncontested Facts, all of which was supported by testimony, contracts, and discovery responses. But you agree that the contract itself was not before the district court? It was not part of the record? It was attached to the deposition of one of the — It wasn't part of the record on summary judgment. But you're right. What was before the court was the testimony of the 30B6 witnesses for — two of them for the company who were noticed for and discussed specifically all of those provisions, which I would argue is the better evidence because those contracts are just amazing, which goes to the control test. They control everything from what they wear to the time they drive up, how they unload and pick up mail. But we don't know that because that's outside the record. Oh, no. It's absolutely inside the record because we discussed it with the 30B6 witnesses, and their swarm testimony discusses it at length. So what they said the contract said is before — in the record? Yeah. They were very strong in providing control information, Your Honor, and control facts in their testimony, which was designated as some of the purpose — as the purpose for that deposition. You know, the other thing, this is one case, this is one situation for them where they — that is, Triple L leased the truck from Penske. And it's interesting because that lease requires that they have absolute control over the drivers. And if we're talking at all about the control test, between the significant testimony about the control that's required and only can be provided by Triple L on the USPS contract, and the control that they contractually agreed to in relation to getting that truck for Mr. Oleus to use, we've got law, we've got precedent, we've got contract. Final thing about the Workers' Compensation Act, if I might. I'm past my time. Yeah, briefly. These temporary employment agencies have become a big deal in Montana in relation to this ongoing fight about who's an independent contractor and who has to provide 116, enacted an expanded definition of employer. The definition of employer now for workers' compensation experience and other purposes is that if an individual, an entity, provides an employee to a company and they're not a temporary employment agency, that employee is presumed to be the employee of the person accepting them. And the rebuttable presumption, talking about control being inherent in Montana law, the rebuttable presumption has to be that the loaning employee, employer, has to prove complete control start to finish. So we've... Even if they're providing the wages. Pardon me? Even if they're the ones providing the wages. It would be for anybody that's not a temporary employment agency. So if you loan somebody, and you're not a licensed temporary employment agency, that's going to be the loanee's employee unless you have total control by statute. But this statute was not in effect at the time of this accident. Yes, it was. Oh, it was? Yes. I thought you said it was recent. There is no, in my opinion, in relation to being involved in that system for a long time and knowing these laws and the things that we've cited to you, there is no question that Mr. Olias would have been considered by the workers' compensation system as an employee. The fact that Phoenix provided comp to him didn't bring that into it. But I can tell you, when I said everything's been the same for 20 years, they've just changed it, because of this accident, and this is in the record, uncontested, they moved back, and Mr. Olias, if he came back to work now, and anybody like him, would again be an employee of Triple L. The mistake has been corrected. It's like an audit. It works until somebody audits you. Everything works. So I do believe, and thank you for your time, I do believe that the control test is applicable. The evidence is undeniable that we have a dual employment situation, and the case should be affirmed. Thank you, counsel. We've got two minutes for rebuttal. Your time is generous, and I'll try to put it to good use. This case is not about work comp coverage and work comp exclusivity. It's absolutely about a narrow construction of an insurance exception, an exclusion, and the Montana Supreme Court has twice said, let's look at what employee means in that common sense definition. The common sense definition is one who provides services to another for wages or salary. In that context, we look at the underlying court being potentially critical of what Triple L was doing. It had increased workers' compensation premium because one of the owners got hurt at work. Well, all it had to do is exclude that owner, which doesn't need to have workers' compensation coverage from their coverage. This isn't a sophisticated underlying entity that was crafting unusual ways to game State Farm, and in fact, that doesn't even really matter to this analysis because we're looking at how Montana law applies to a narrow exclusion, and the court has twice said the common sense definition has to apply, and it has twice identified what that common sense definition is in both court and in fact. So counsel, opposing counsel said that Ramsbacher thought that was right on point. So the cases that you think are right on point are what? Well, Horton and Boettcher. And Ramsbacher has nothing to do with an insurance exclusion. Ramsbacher is a professional employment organization. All right. Statutory. Got that. If I thought that those cases weren't precisely on point, is there any reason to certify this? No, Your Honor. If those cases — oh, if Horton and Boettcher aren't precisely on point, I think that there would be ample reason to certify it, but it is. And the irony is that you think that Boettcher stands for the proposition that it should be the ordinary usage. Well, Horton says that, and Boettcher just reiterates the exact definition. Right. I mean, the irony, of course, is that that Boettcher was written by Justice Morris. That's beautiful irony, Your Honor. Thank you. If there's any other questions, I'd be happy to address them. Okay. Okay. Thank you, counsel. Thank you to both of you for your help in this complicated case. And that concludes our arguments for the day and the cases. The Court is now adjourned. All rise.
judges: BYBEE, NELSON, Bolton